IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TERRANCE L. GAYTON,

        Petitioner,

vs.                                                                                    No. CIV-11-356 JH/LFG

ANTHONY ROMERO, Warden, and
GARY K. KING,
Attorney General for the
State of New Mexico,

        Respondents.

## MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDED DISPOSITION[1]

### Findings

1.      On April 27, 2011, Petitioner Terrance L. Gayton ("Gayton") filed a *pro se* Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. [Doc. 1.] Gayton claims that the State District Court did not give him sufficient "jail and probation credits" or that his state sentence was not properly credited with time served. [Doc. 1, at 7; Doc. 14, at 7.] In addition, in a later filed "Motion for Review of Both Jail and Probation and Case Charges" [Doc. 13, at 2-3] and a "petition" [Doc. 33, at 3, and attached motion], Gayton may attempt to add a Fourth Amendment

---

[1]**Within fourteen (14) days after a party is served with a copy of this analysis and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendation. A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the analysis and recommendation. If no objections are filed, no appellate review will be allowed.** *See, e.g.*, **Wirsching v. Colorado, 360 F.3d 1191, 1197 (10th Cir. 2004) ("firm waiver" rule followed in Tenth Circuit holds that a party who fails to object to magistrate judge's findings and recommendations in timely manner waives appellate review of both factual and legal questions).**

claim concerning allegations of an illegal search and seizure during his arrest.[2]  Gayton is currently confined at the State Penitentiary of New Mexico in Santa Fe.

2.      Because Gayton's petition challenges the execution or duration of his sentence rather than its legality, the Court construes his habeas petition under 28 U.S.C. § 2241, as opposed to § 2254.  *See* Davis v. Roberts, 425 F.3d 830, 833-34 (10th Cir. 2005) (A state prisoner may seek a writ of habeas corpus under § 2254 when he challenges the legality of the sentence he is currently serving.)  A challenge to the execution of a particular sentence, like that raised by Gayton, is properly brought under § 2241.  *See id.* at 833.  *See also* Montez v. McKinna, 208 F.3d 862, 865 (10th Cir. 2000) (construing petition as brought under § 2241 when petitioner challenged the fact or duration of the execution of his sentence, rather than the validity of his underlying sentence or conviction).

3.      On July 25, 2011, Respondents filed a Partial Answer to Gayton's petition, while they continued to ascertain whether Gayton's claim regarding improper credit for probation time was accurate. [Doc. 14.] Respondents noted that the records department at the Penitentiary of New Mexico was conducting an audit of Gayton's file.  Thus, Respondents expected to supplement the answer as soon as the audit was completed. [Doc. 14, at 8.]

4.      Respondents agreed that Gayton's allegations of failure to award the correct probation credit or time served were exhausted. [Doc. 14, at 8-9.]

---

[2]On November 15, 2011, Gayton filed a separate complaint alleging § 1983 violations in relation to several Fourth Amendment claims.  Gayton v. Lopez, No. CIV 11-1016 WJ/KBM.  On November 17, 2011, the Court dismissed the action, informing Gayton that the relief he sought, if available, must be pursued in a habeas proceeding rather than a civil rights action.  Id. [Doc. 4 in No. CIV 11-1016.] The present habeas petition, filed in April 2011, was already pending.  (*See* discussion *infra* as to Fourth Amendment claims.)

5. Respondents also argued Gayton's possible additional claim of illegal search and seizure is not subject to review. [Doc. 14, at 2, 9.] Respondents asserted that Fourth Amendment claims are not cognizable federal habeas claims and that Gayton waived any challenge as to motion to suppress issues based on the terms and conditions of the Repeat Offender Plea and Disposition Agreement. [Doc. 14, at 10.]

6. On September 6, 2011, Respondents filed a supplement to the answer, noting that a review of Gayton's good time credit indicated he was not entitled to any additional award. Respondents claimed that Gayton actually benefitted from the credit calculation and may have been given additional unearned credit. Respondents also argued that to the extent Gayton attempted to raise new issues concerning his arrest and conviction in other motions [*see, e.g.,* Doc. Nos. 15, 16, and 17], such claims were not exhausted and were not raised before any state district court. [Doc. 22, at 5.]

7. Gayton did not file a "reply," but his "petition," filed November 29, 2011, was considered in reaching these findings and recommendations. [Doc. 33.] In addition, he filed a number of motions, that, while denied, were considered. [*See, e.g.,* Doc. Nos. 13, 16, 17, 26-29, 31, 36, 37.]

**Procedural Background**

8. On June 3, 2009, the Second Judicial District Court, in State v. Gayton, CR 08-782 (County of Bernalillo, State of New Mexico) entered a Judgment, Sentence, and Partially Suspended Sentence. [Doc. 14, Ex. A.] The June 3, 2009 Judgment indicated Gayton entered a guilty plea on June 2, 2009 to a charge of trafficking (by possession with intent to distribute cocaine). Gayton was sentenced to a 10-year period of incarceration, including one year for his repeat offender status. Nine years of his sentence were suspended so that Gayton's actual term of incarceration was one

year in the Metropolitan Detention Center ("MDC"). [Id., at 3.] In addition, was given a 2-year term of parole after release. He was also sentenced to a five-year period of supervised probation. Gayton was initially awarded 169 days of pre-sentence confinement credit. The remaining two counts of the indictment were dismissed. [Id., at 5.]

9. The Repeat Offender Plea and Disposition Agreement [Doc. 14, Ex. E] documented Gayton's criminal history, including convictions for multiple instances of grand theft, defrauding an innkeeper, and multiple instances of failure to appear for a felony offenses. The Sentencing Agreement was for "one year habitual up to 10 years." [Id., p. 16.] The terms of the Agreement further provided that if Gayton violated probation, he would be subject to the balance of the sentence in addition to "seven years mandatory" for the Habitual Offender proceedings. The terms of the Agreement also included waiver of defenses and appeal, including that Gayton gave up all motions, defenses, objections, or requests that he had made or could make concerning the court's entry of judgment. Gayton further waived his right to appeal. [Id., at 18.]

10. On July 29, 2009, the State Court entered an Amended Judgment, Sentence, and Partially Suspended Sentence. [Doc. 14, Ex. B.] The sole change was that Gayton received 195 days of pre-sentence confinement credit rather than 169 days of credit. [Id., at 10.]

11. On September 16, 2009,[3] the State Court entered an Order of Probation noting it was placing Gayton on a 5-year period of supervised probation, beginning on June 2, 2009, scheduled to end on June 1, 2014. [Doc. 14, Ex. G.] Thus, it appears that Gayton's five-year period of supervised probation began running concurrently with his one-year term of incarceration. [*See* Doc.

---

[3]It is unclear why this Order of Probation, that states it is being entered on June 2, 2009, was not filed until September 16, 2009. [Doc. 14, Ex. G.]

22, at 2 ("Petitioner began his five years of supervised probation on June 2, 2009[,]" the date Gayton was sentenced).]

12. Before the September 16, 2009 Order of Probation was entered, Gayton alleges that, on August 26, 2009, he was "released from MDC on probation." [Doc. 1, at 5; Doc. 13, at 3.] Respondents neither confirm nor deny this release date. As of August 26, 2009, it appears Gayton would have served less than 3 months of his one-year sentence (June 2, 2009 to August 26, 2009). With the credit of 195 days for time already served, Gayton would have had to serve a little more than six months of the one-year petition (365-195=170 days). However, even though Respondents provided no information to this effect, Gayton may have been released early after receiving additional good time credits. [*See* Doc. 14, Ex. U (showing only 2010 and 2011 credits).]

13. Gayton violated conditions of probation sometime in March 2010 or April 2010. [Doc. 14, Ex. J.] The date of April 12, 2010 is used in some pleadings as the date of probation violation.

14. On April 15, 2010, the State Court entered an Order regarding an alleged probation violation by Gayton. The Order indicated "Probationer Gayton has failed to report as required." [Doc. 14, Ex. H.] A bench warrant was issued that same date for Gayton's failure to comply with the conditions or probation imposed by the State Court on June 2, 2009. [Doc. 14, Ex. I.]

15. According to the State Court docket sheet, Gayton was arrested on May 4, 2010 for a probation violation. [Doc. 1, exhibit; Doc. 13, at 3.]

16. On May 10, 2010, the State filed a motion to revoke Gayton's probation. [Doc. 14, Ex. J.] The Probation Report, dated April 12, 2010, indicated Probationer Gayton reported for his regularly scheduled probation visit on March 15, 2010. He reported he would be staying at the Rescue Mission. On March 26, 2010, a field call was made to Gayton's reported residence, but the

manager stated Gayton had not been there for several days. On April 8, 2010, the probation officer received a call from Gayton's former wife who said she had seen Gayton and let him use her cell phone. But, Gayton took the cell phone and the former wife had not seen or heard from him since. Thus, Gayton was found to have violated his reporting requirements and also the requirement that he get permission to change residence. In addition, on March 23, 2010, the probation officer received an email with the results of Gayton's drug test; Gayton tested positive for cocaine. The probation report also indicated that Gayton was referred for a counseling assessment on September 19, 2009, but that he did not provide proof of the assessment. [Doc. 14, Ex. J, attached report.] The probation officer recommended that a no-bond bench warrant be issued and that the State file a motion to revoke probation. She further recommended that Gayton's probation be revoked and that he be remanded to the Department of Corrections for the remainder of his sentence. [Id.]

17. On May 10, 2010, an Addendum to the Motion to Revoke Probation was filed, indicating a new crime and another technical violation by Gayton. [Doc. 14, Ex. K.] The new crime involved charges against Gayton for falsely obtaining services or accommodations at the Homewood Suites in early May 2010, and Gayton's failure to obtain permission from his probation officer before making several trips to Santa Fe. The probation officer found that Gayton had no interest in completing his probation. [Id., Ex. K, attached addendum.]

18. On June 2, 2010, a hearing was held during which the State Court found Gayton admitted to violating terms of probation. The State Court revoked Gayton's probation, as of the date of the hearing. [*See* Doc. 14, Ex. C or L.]

19. On June 15, 2010, an Order Revoking Probation was entered, finding that Gayton had violated the terms of probation. He was then sentenced to serve a term of 1545 days (4 years and

85 days) in the Department of Corrections, with a parole term of two years. He allegedly was given credit for all time served on the original probation. [Doc. 14, Ex. C, Ex. L.]

20.     On June 30, 2010, Gayton filed a motion for correction of sentence and correction of jail and probation credits. [Doc. 14, Ex. M.] He claimed he should have been sentenced to a term of four years (1460 days) but that the State Court's Revocation Order indicated a term of 1545 days. Gayton also asserted that he had served one year and seven days at MDC.

21.     On July 25, 2010, an Amended Order Revoking Probation was entered, correcting his sentence to a term of 1460 days. In other words, the Order was amended to reflect 1460 days of confinement, rather than the original 1545 days of confinement. [Doc. 14, Ex. D.] The term of 1460 days gave Gayton 360 days of probation credit. [Doc. 22, at 4.]

22.     On August 4, 2010, the State Court entered an Order on Gayton's motion for correction of sentence, correcting the sentence, jail and probation credits "as reflected in Amended Order Revoking Probation signed 8/3/10." [Doc. 14, Ex. N.] There is no order entered, dated or signed 8/3/10; however, the Amended Order Revoking Probation and reflecting the corrected term of 1460 days was entered on July 25, 2010. [Doc. 14, Ex. D.] A similar Amended Order was entered again on August 9, 2010, reflecting the corrected term of 1460 days. [Doc. 14, Ex. O.]

23.     On February 18, 2011, Gayton filed a motion for jail and probation time served. He asked the State court to "review the record sent by the court signed on 8/3/201," which actually does not appear to exist. [Doc. 14, Ex. P.] Gayton also pointed out that "every order or judgment and sentence had extended the term of parole from one year to two years," even though Gayton believed he was given a one-year term of parole on June 2, 2010. In addition, Gayton did not believe the Judgment and Sentence reflected the correct time he had served. In support of his position, Gayton stated that on March 23, 2009, he was held in El Paso County Jail and transported to Bernalillo

County. On June 2, 2009, he was sentenced to a one-year term at MDC. He was given credit for 195 days time served, "which gave [him] 5 months and 4 days to complete in jail sentence. Giving Defendant in total of 354 days." [Doc. 14, Ex. P.]

24. Gayton's motion further stated that he was given supervised probation for a 5-year term and that he had completed a "full year on probation before violated (June 2 2009 to June 2 2010)." Thus, Gayton believed he was entitled to additional credits for time served. [Doc. 14, Ex. P.]

25. On March 1, 2011, the State Court entered an Order denying Gayton's motion. The Order stated that the Amended Judgment and Sentence, filed 7/29/09, gave Gayton 195 days of pre-sentence credit. The Order further stated that second-degree felonies by law have a two-year parole period. [Doc. 14, Ex. Q.]

26. On March 10, 2011, Gayton, acting *pro se*, filed a state habeas petition, raising issues concerning the jail or probation time he believed he should have been credited. [Doc. 14, Ex. R.]

27. On March 17, 2011, the New Mexico Supreme Court denied his petition for writ of certiorari. [Doc. 1, exhibit.]

## Analysis

### Exhaustion of State Remedies

28. The Court construed Gayton's petition as one arising under 28 U.S.C. § 2241. Whether construed under § 2241 or § 2254, it makes little difference with respect to the issue of exhaustion since that rule is applied in the same manner to both types of petitions. Wilson v. Jones, 430 F.3d 1113, 1118 (10th Cir. 2005), *cert. denied*, 549 U.S. 943 (2006). *See also* Montez, 208 F.3d at 865-66 (§ 2241 habeas petitioner is required to exhaust state remedies before bringing a federal action); Dever v. Kansas State Penitentiary, 36 F.3d 1531, 1534 (10th Cir. 1994) ("exhaustion

requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack") (internal citation omitted).

29.     Respondents concede that Gayton exhausted his state remedies before bringing this action challenging the calculation of his sentence.[4] Thus, the Court determines his § 2241 claim is exhausted.

## **Deference to State Court Adjudications**

30.     A federal court is precluded from granting habeas relief on any claim adjudicated on the merits by the state courts, unless the proceeding resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d);[5] Smallwood v. Gibson, 191 F.3d 1257, 1264-65 (10th Cir. 1999), *cert. denied*, 531 U.S. 833, 121 S.Ct. 88 (2000).

31.     Section 2254(d) was amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which "increase[d] the deference to be paid by the federal courts to the state court's factual findings and legal determinations."  Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th Cir. 1997).  The Tenth Circuit Court of Appeals explained:

---

[4]Respondents state that Gayton's July 9, 2010 motion for correction of sentence, etc. [Doc. 14, Ex. M] and his February 18, 2011 motion for jail and probation time served [Doc. 14, Ex. P] raised the claims regarding the supposed failure to award the correct probation credits. [Doc. 14, at 8.] The State Court issued Orders in response to Gayton's motions, both granting and denying the requested relief. [Doc. 14, Exhibits N and Q.]  Respondents characterize Gayton's March 10, 2011 "Petition for Writ of Habeas Corpus" as his petition for writ of certiorari to the New Mexico Supreme Court, as it was filed in the New Mexico Supreme Court. [Doc. 14, Ex. R.] The New Mexico Supreme Court summarily dismissed Gayton's petition in an Order entered March 17, 2011. [Doc. 14, Ex. S.]

[5]In reviewing petitions brought under § 2241, the Court applies the standards set forth under 28 U.S.C. § 2254(d) to the pertinent state court decision.  Aquiar v. Tafoya, 95 F. App'x 931, 932-33 n. 2, 2004 WL 848417 (10th Cir. Apr. 21, 2004).

> Under § 2254(d)(1), a federal court may grant a writ of habeas corpus only if the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law, decided the case differently than the Supreme Court has decided a case with a materially indistinguishable set of facts, or unreasonably applied the governing legal principle to the facts of the petitioner's case. 'Under § 2254(d)(1)'s unreasonable application clause . . ., a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable.' 'In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.' AEDPA also requires federal courts to presume state court factual findings are correct, and places the burden on the petitioner to rebut that presumption by clear and convincing evidence.

Sallahdin v. Gibson, 275 F.3d 1211, 1221-22 (10th Cir. 2002) (*relying on* 28 U.S.C. § 2254(e)(1)).

32. Before reaching the merits of Gayton's claims regarding the computation of his sentence, the Court must determine if the State Court adjudicated the claims on the merits. As to one of Gayton's requests to correct his sentence, the State Court granted the relief and entered an amended order clarifying the credit to which Gayton was entitled. Thus, the Court determines the State Court adjudicated Gayton's request on the merits. Even if the State Courts' decisions were summary opinions, there is authority for the proposition that a court's summary dismissal of a habeas petition constitutes an adjudication on the merits. *See* Wilson v. Workman, 577 F.3d 1284, 1308 (10th Cir. 2009) (the phrase 'adjudicated on the merits' does not require the state court to have explained its reasoning process; even a summary decision lacking "cursory reasoning ... constitute[s] an 'adjudication on the merits'.") (internal citations omitted). *See also* Kirby v. Attorney General ex rel. New Mexico, 2011 WL 4346849, *5 n.5 (10th Cir. Sept. 19, 2011), *pet'n for cert. filed* Dec. 19, 2011) (unpublished) (*relying on* Aycox v. Lytle, 196 F.3d 1174, 1177-78 (10th Cir. 1999)) (affording deference under the AEDPA, to state court's rejection of claim's merit, despite lack of any reasoning); Weeks v. Angelone, 176 F.3d 249, 259 (4th Cir. 1999), *aff'd*, 528 U.S. 225, 120

S.Ct. 727 (2000).  *See also* <u>Wright v. Angelone</u>, 151 F.3d 151, 157 (4th Cir. 1998) (refusing to presume that a summary order indicated a cursory or haphazard review of a petitioner's claims). Gayton's claims were adjudicated on the merits in State Court and are, therefore, subject to review under the standard set forth in 28 U.S.C. § 2254(d).

### **Claim that Sentence Was Improperly Calculated**

33.     Gayton's multiple pleadings, notices, and motions in this case, along with his numerous different computations of his time served or probation credit [*See, e.g.,* Doc. Nos. 1, 13, 15, 16, 17, 18, 19, 20, 23-25, 31, 33, 36-38] make it difficult to decipher his exact claims or the exact dates or periods of time that might be at issue.

34.     Respondents characterize the allegations as claims that Gayton did not receive "appropriate presentence credit as well as credit for time served while on probation." [Doc. 14, ¶¶ 14, 15.]

35.     During the period when Gayton was serving his one-year sentence or his probation, the State Court made several corrections to orders it issued.  On July 28, 2009, the State Court filed an amended judgment and sentence, correcting Gayton's pre-sentence confinement credit from 169 days to 195 days. [Doc. 14, Exhibits A, B.] After Gayton's probation violation in March or April 2010, the State Court initially sentenced Gayton to a term of 1545 days (more than four years), but then corrected that sentence to 1460 days (four years). [Doc. 14, Exhibits L, M, N, O.] The difference of 85 days (1545-1460=85) is documented on the New Mexico Corrections Department "Good time Figuring Sheet" for Gayton ("2010-09-28 Per Amended JAS 85 Day Adj"). [Doc. 14, Ex. U.]

36.     In one of Gayton's August pleadings [Doc. 17, at 5], he states the following:

> This Court will find that Ex. U only corrected the eighty five (85) days over sentence and didn't give the additional day's such as the One (1) year and to weeks jail time March 16 2009 to Agust 27. 2009 [sic] 1 year Sente... March 23, 2010 to March 30, 2010 sanktion Agust 27. 2009 to June 15 2010 Probation July 29 2009 Amended JnS 195 days May 4, 2010 to June 2 2010 Post conviction June 2 2010 to June 23 2010 post conviction time. Nore will the Court find within this counseler's report these dates because the State will justify what state does. Respondents has calculated no time doen on probation nor has the Court Granted any jail time served in jail or any post conviction time, and the day's missing are six hundred and fourty four (644) days.[6]

[Doc. 17, at 5-6.] Gayton's calculations vary. For example, in his initial petition [Doc. 1, at 6], Gayton estimated he was entitled to 751 days credit. In a State Court pleading, he alleged he was entitled to 354 days. [Doc. 14, Ex. P.]

      37.      With respect to Gayton's specific allegations of the time to which believes he should be credited [*supra,* ¶ 36], the Court makes the following observations. Gayton contends he should have received credit for one year and two weeks for the period of March 16, 2009 to August 27, 2009. That period consists a little over five months rather than a year and two weeks. Moreover, the period of June 2, 2009 to August 27, 2009 was part of the one-year probation term that was credited to Gayton. Gayton provides no explanation as why he believes he is owed time as of March 16, 2009. He was not sentenced until June 2, 2009.

      38.      Regarding the period March 23, 2010 to March 30, 2010, which Gayton follows with the word "sanktion," Gayton provides no explanation as to what he means as to the sanction. In addition, that one-week period is part of the one-year probation that Gayton was credited (June 2, 2009 to June 2, 2010). Gayton also writes: "Agust 27. 2009 to June 15 2010 Probation[,]" but those

---

[6]Gayton's computation, as quoted, contains a number of misspelling and typographical errors but the Court omits the use of [sic] to simplify reading his allegations.

dates reflect his release date and the State Court's entry of the order revoking probation. As already stated, Gayton was credited with one year of probation between June 2, 2009 and June 2, 2010. He is not entitled to double credit for that time even if he was serving part of his sentence concurrently with a period of probation. The remainder of the dates set out *supra,* at ¶ 36, provide no further illumination as to how Gayton reaches his calculation of 644 days.

39.     In contrast, after conducting an audit of Gayton's good-time credit, Respondents contend that Gayton actually benefitted from the credit calculation and "may have been given additional unearned credit for the time [he] had absconded from custody." [Doc. 22, at 1-2.]

40.     Respondents explained Gayton's probation was revoked on June 15, 2010 and that the State Court sentenced Gayton to serve what time remained of the five (5) year probation term. Gayton was initially credited with 280 days of probation, but after the correction, Gayton was credited with 360 days of probation credit. [Doc. 22, at 3-4.] Petitioner was out of custody and on probation for about 314 days (from June 28, 2009, the date of his release, to April 12, 2010, the date he violated probation). It may be a typographical error when Respondents state Gayton was given 380 days probation when they noted in the preceding paragraph that he received 360 days credit. While Respondents conclude that Gayton received 66 days more than he was entitled to receive, it would seem that he may have received 46 days more than he was entitled to receive, under the scenario set out by Respondents. [Doc. 22, at 4.]

41.     The Court reaches a slightly different calculation than that of Respondents. Because the State Court's Order of Probation noted it was placing Gayton on a 5-year period of supervised probation, beginning on June 2, 2009 (when his one-year sentence began) [Doc. 14, Ex. G, at 1], the Court finds that Gayton served almost exactly 365 days of probation when his probation was revoked as of the date of the probation revocation hearing on June 2, 2010. [Doc. 14, Ex. L.] Thus,

13

the State Court's amended Order Revoking Probation [Doc. 14, Exhibits D or O], which provides that Gayton is sentenced to serve a term of 1460 days (four years) appears correct.  Gayton had served one entire year of probation and received that credit.  He was to serve the remaining four years of the original five-year supervised probation, although he was sentenced to the Department of Corrections for the probation violations.  Indeed, based on a reading of the Repeat Offender Plea and Disposition Agreement [Doc. E, at 4], Gayton could have been subject to the balance of the sentence "in addition to seven (7) years mandatory for the Habitual Offender proceedings."

42. Gayton's calculation, as described *supra*, makes no sense.  Gayton appears to mixing up periods of confinement and periods of probation or duplicating those periods to reach a figure of 644 or 751 days he contends he was owed.

43. In addressing the legal issues raised by Gayton's § 2241 petition, the District Court for the District of Kansas explained –

> to state a claim under § 2241 based upon incorrect sentence computation, a habeas petitioner has the burden of clearly showing or stating to the court how his sentence has been calculated by prison authorities, what particular calculations he asserts are erroneous, and the reasons and or authority for his assertions.  Copies of an inmate's attempts at resolution through prison grievance procedures should considerably aid this process.  Sentence computation is a matter particularly within the expertise of prison authorities, and to obtain judicial review the habeas petitioner must show that the agency's actions have been arbitrary or capricious to the extent that his federal constitutional rights have been violated.

Verstynen v. Kline, 2006 WL 83096, *4-5 (D. Kan. Jan. 12, 2006) (unpublished).  Here, Gayton alleges many spans of dates for which he contends he is owed time, but fails to identify any specific errors in the State's calculations.  Indeed, he did not reveal the date that has been calculated as his maximum release date, nor did he calculate that projected release date based on good-time credit

he might receive on a monthly basis.[7] Without that date and without more detail, along with an explanation of appropriate reasons and authorities for his summary assertions, Gayton did not satisfy his burden of "clearly showing" how his sentence was miscalculated. Thus, the Court rejects his summary conclusion that he is owed any time not already credited.

44.     Under either calculation of the time credited to Gayton (whether that of the Court's or Respondents), the Court concludes that Gayton did not demonstrate that the State Court's decision denying his claims regarding sentence computation "resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented." Therefore, the Court recommends denying Gayton's § 2241 petition and dismissing it with prejudice.

### **Purported Fourth Amendment Claim**

45.     There has been confusion as to whether Gayton sought to raise Fourth Amendment claims in this § 2241 petition. His original petition [Doc. 1] almost exclusively argues his claim concerning credit allegedly owed on his sentence. In the original petition, Gayton only briefly mentioned that his direct appeal concerned an attempt to have his case dismissed because of allegations that the police illegally obtained evidence.

46.     On February 7, 2012, Gayton filed a "Motion to Correct Issue, that the Court granted." [Doc. Nos. 40, 41.] In this recent motion, Gayton explained that on November 17, 2011, the District Court dismissed his § 1983 lawsuit (No. CIV 11-1016 WJ/KBM [Doc. 4]) noting that Gayton could attempt to raise his Fourth Amendment claims via a § 2254 petition, but not by way

---

[7]While Respondents provided a good time figuring sheet for Gayton [Doc. 14, Ex. U], it is not clear when that document was last updated, nor is it clear if it provides the current projected discharge date for Gayton.

of a civil rights complaint.  Thus, according to Gayton's recent motion, he attempted to file a new petition, on November 29, 2011, raising the Fourth Amendment claims in a § 2254 petition. [Doc. 33.]  However, instead of docketing this November 29, 2011 petition as a separate, new habeas proceeding, that petition [Doc. 33] was mistakenly docketed as a supplemental pleading in the present § 2241 habeas proceeding.  In other words, Gayton never intended to raise Fourth Amendment issues in this current habeas proceeding.  Indeed, on February 7, 2012, Gayton filed a new § 2254 petition, raising those issues.  Gayton v. Lopez, No. CIV 12-123 RB/RHS [Doc. 1].

      47.     Thus, based on Gayton's clarification [Doc. 40] and his newly filed § 2254 petition, attempting to raise Fourth Amendment claims, the Court makes no findings or recommendations as to Fourth Amendment claims in this proceeding.

### **Recommended Disposition**

That Gayton's habeas petition, construed as a 28 U.S.C. § 2241 petition, challenging the computation of sentencing or probation credits owed, be denied and that this matter be dismissed with prejudice.

                                                             *Lorenzo F. Garcia*
                                                 Lorenzo F. Garcia
                                                 United States Magistrate Judge